**Thomas Norman BRIGGS, Petitioner-Appellant,**

v.

**Raymond K. PROCUNIER, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 84–1463.

United States Court of Appeals, Fifth Circuit.

July 1, 1985.

Thomas Norman Briggs, pro se.

Travis Dale Jones, Lubbock, Tex. (Court-appointed), for petitioner-appellant.

Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Thomas Norman Briggs appeals the denial of his habeas corpus petition, contending that Texas twice placed him in jeopardy for the same offense. He argues that Texas did so by voluntarily dismissing the enhancement counts of his indictment for burglary just before the start of the punishment phase of his first trial, and, after joining his successful motion for new trial, again indicting him as a habitual offender, charging the same burglary but different prior convictions, and obtaining a conviction and life sentence. We agree that under existing precedent Briggs was twice placed in jeopardy for the same offense, and reverse.

I

On April 12, 1976, a Texas grand jury indicted Briggs for burglary of a building. The indictment alleged that Briggs had been convicted of felonies in 1960 and 1965. Under Texas Penal Code Ann. § 12.42(d) (Vernon 1974), if the state proves at trial that a defendant not only committed the primary offense, but also has been twice previously convicted of felonies, the defendant must be sentenced to life in prison. Briggs pleaded not guilty, and the court appointed counsel for him.

According to the docket sheet of Briggs's first trial,[1] the jury was selected, impaneled, and sworn. The first paragraph of the indictment, charging Briggs with burglary, was then read to it. After hearing evidence on the burglary charge, the jury returned a verdict of guilty.

The state then filed a motion to strike the second and third paragraphs of the indictment, which alleged Briggs's prior felony convictions. According to the affidavit of the prosecutor, Rider Scott, the state dismissed the enhancement counts because of the difficulty of proving them: the first conviction did not reflect "sufficient information on waiver of counsel," and the second contained "a variance between what was alleged in the indictment as the cause number and the proof." The affidavit of another prosecutor, Barry Sorrels, reflects that Scott told Sorrels of "problems he had had with respect to proving up the two enhancement paragraphs in the prior 1976 trial of Mr. Briggs." The court granted the motion. At the sentencing phase of the trial, the jury thus considered only the range of punishment authorized for burgla-

---

1. No trial transcript is available.

ry, and sentenced Briggs to thirteen years in prison.

Briggs, although still presumably represented by counsel, then filed a pro se motion for new trial, asserting that the verdict was contrary to both "the law and the evidence." Later, Briggs submitted a handwritten memorandum in support of his motion, alleging, without reference to any facts, violations of six provisions of the Bill of Rights. The State joined in the motion for new trial, and the court, without opinion, granted it.

On June 11, 1979, another grand jury reindicted Briggs on the burglary charge, and alleged two previous felony convictions different from those alleged in the 1976 indictment. At a second trial, the jury found that the prosecution had proven the burglary and two prior felony convictions. Briggs was sentenced to life in prison. After exhausting his state remedies, Briggs filed this habeas corpus action.

## II

Before reaching the merits, we sua sponte consider whether Briggs has filed a timely notice of appeal, a prerequisite to our appellate jurisdiction. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

On May 3, 1984, the district court entered an order adopting the reasoning of the magistrate and denying Briggs's habeas petition. On May 9, Briggs mailed the clerk of the district court several pleadings, including a Motion for Reconsideration of the Court's Judgment and a Notice of Appeal. The clerk's docket sheet states that these papers were "filed" on May 14, and "received from the magistrate and docketed" on May 25. The district court's order denying Briggs's Motion for Reconsideration was both filed and docketed on May 25.

On May 29, the clerk filed a motion by Briggs asking the court to "order the Clerk to make known to the appellant the specific content of the record of this proceeding." The motion recited that a copy had been served by mail on the Texas assistant attorney general, and stated that its purpose was to allow Briggs "to present and pursue his Appeal of the Judgment denying relief in this court to the United States Court of Appeals for the Fifth Circuit."

■ Federal Rule of Appellate Procedure 4(a)(1) requires that notices of appeal "be *filed* with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from ..." (emphasis added). Under Rule 4(a)(4)(iii), if a Rule 59 motion to alter or amend the judgment is filed, "the time for appeal ... shall run from the entry of the order" denying the motion. *Griggs* held that a notice of appeal filed before the disposition of the Rule 59 motion is a "nullity" insufficient to confer appellate jurisdiction. 459 U.S. at 61, 103 S.Ct. at 403. Briggs's Notice of Appeal, filed eleven days before the entry of the judgment denying his Motion for Reconsideration, was thus ineffectual.

■ Briggs, however, rescued his appeal by filing the May 29 motion to clarify the record. As we said in *Cobb v. Lewis*, 488 F.2d 41, 45 (5th Cir.1974):

> [T]he notice of appeal requirement may be satisfied by any statement, made either to the district court or to the Court of Appeals, that clearly evinces the party's intent to appeal. Such a statement accomplishes the two basic objectives of the Rule 3 notice requirement: (1) to notify the Court of the taking of an appeal; and (2) to notify the opposing party of the taking of the appeal.

*See also Stevens v. Heard*, 674 F.2d 320, 322 (5th Cir.1982). In *Carter v. Campbell*, 285 F.2d 68 (5th Cir.1960), cited with approval in *Cobb* and *Stevens*, we held that a motion filed in this court for leave to prosecute an appeal on the original record constituted an adequate notice of appeal. Like the appellant's motion in *Carter*, Briggs's May 29 motion expressly informed both the court and the state of Briggs's desire to appeal; critically, it contained all the infor-

mation required of a notice of appeal by Fed.R.App.P. 3(c).[2]

In two cases since *Stevens,* we have held that documents filed after an invalid notice of appeal were not equivalent to new notices of appeal. *Van Wyk El Paso Investment, Inc. v. Dollar Rent-a-Car Systems, Inc.,* 719 F.2d 806 (5th Cir.1983) ("Form of Appearance of Counsel"); *Alamo Chemical Transportation Co. v. M/V OVERSEAS VALDES,* 744 F.2d 22 (5th Cir.1984) (request for enlargement of time to file appellate brief). In *Van Wyk,* the court noted that the document filed by the appellant "could be read as no more than [a] step[] in the perfection of the prematurely noticed appeal." 719 F.2d at 808. Nevertheless, the court went on to consider whether the appellant's filing included the requisite Rule 3(c) facts, and found that it did not. In *Alamo Chemical,* similarly, the court held that the appellant's request did not "constitute[] an adequate notice of appeal under Rule 3(c)." 744 F.2d at 23.

Although Briggs's May 29 motion, like the motion in *Van Wyk,* reflected the appellant's belief that he was acting on an appeal already noticed, rather than initiating a new appeal, the same was true in *Carter v. Campbell.* Briggs's motion, like the one in *Carter,* but unlike those in *Van Wyk* and *Alamo Chemical,* satisfied the literal requirements of Rule 3(c). Given the analysis actually used in *Van Wyk* and *Alamo Chemical,* we are not prepared to say that those cases hold that a document, otherwise meeting Rule 3(c)'s requirements, can satisfy that Rule only if it demonstrates not only its author's intent to appeal, but also an intent that the document itself mark the beginning of the appeal. Regardless, the *Carter* case, decided earlier, never criticized or overruled, and cited with approval in *Stevens* in 1982, controls on these virtually identical facts. We find that Briggs's pro se pleading of

May 29 was a sufficient peg for our appellate jurisdiction, and turn to the merits.

### III

■ Our course has been largely charted by *Cooper v. State,* 631 S.W.2d 508 (Tex. Crim.App.1982) and *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.1982). The Supreme Court vacated the judgment in *Bullard* and remanded for consideration of Bullard's state-law remedies. 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). In dismissing Bullard's federal petition so that he could proceed in state court, this court recognized the continuing validity as circuit precedent of the reasoning expressed in *Bullard.* 708 F.2d 1020, 1022 n. 4 (5th Cir.1983) (citing *French v. Estelle,* 692 F.2d 1021 (5th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983)). Bullard recently won relief in state court. *Ex parte Bullard,* 679 S.W.2d 12 (Tex. Crim.App.1984).

Like the death-sentencing procedure discussed in *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Texas scheme requires the state to prove at trial, beyond a reasonable doubt, the predicate facts, two prior convictions, necessary for the imposition of the harsher sentence. "The two prior convictions must be alleged in the indictment, and upon review the allegations are treated the same as allegations of the elements of a substantive offense." *Bullard,* 665 F.2d at 1357–58 (citations omitted). Therefore, if the state fails to introduce sufficient evidence of the defendant's status as a habitual offender at a first trial, the Double Jeopardy Clause prohibits the sentencing of the defendant as a habitual offender at a second trial. *French v. Estelle,* 692 F.2d 1021, 1023 (5th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983).

Both *French* and *Bullard* involved appellate determinations that the evidence of-

---

**2.** Rule 3(c) states:

The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... *An appeal shall not be dismissed for informality of form or title of the notice of appeal.*
(emphasis added).

fered by the state at petitioners' first trials was insufficient to prove the prior convictions. In each case, this court held that retrial of the petitioner as a habitual offender was impermissible. *See also Ex parte Bullard*, 679 S.W.2d 12 (Tex.Crim. App.1984); *Carter v. State*, 676 S.W.2d 353 (Tex.Crim.App.1984).

Here, by contrast, the state dismissed the enhancement counts during trial. The state argues that because the counts were dismissed, there was no implied acquittal giving rise to double jeopardy concerns; it further argues that because the dismissal occurred before the punishment phase of the trial began, the jury never weighed evidence of the prior convictions, and no jeopardy attached. The state relies on *Lowery v. Estelle*, 696 F.2d 333 (5th Cir. 1983), which upheld a conviction at a second trial on a count dismissed *before* the jury at the first trial was empaneled. *Lowery* held that double jeopardy does not bar retrial "on an offense not put in issue in the first proceeding," and stated that "the necessary predicate to a finding of acquittal ... is a determination that the fact-finder had a full opportunity to return a verdict on the charge the defendant claims [is] precluded, and rejected it." 696 F.2d at 340, 341. *Lowery*, though, expressly distinguished cases involving "retrial on a charge dismissed by the State after prosecution had begun," *id.* at 340.

*Lowery* is inapposite because the Double Jeopardy Clause protects defendants against more than retrial after acquittal. The Supreme Court recognized in *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978) that "a defendant is put in jeopardy even though the criminal proceeding against him terminates before verdict[.]" The very pendency of the proceeding subjects the defendant "to embarrassment, expense, and ordeal." *Id.*, quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). *Crist* specifically held that because a defendant has an "interest in retaining a chosen jury," 437 U.S. at 38, 98 S.Ct. at 2162, jeopardy attaches in criminal jury trials immediately after the jury is sworn; it

applied this rule by granting habeas relief to a defendant who had been retried after a prosecution-initiated dismissal of the first indictment against him.

*Crist* also disposes of the state's contention that no jeopardy attached on the enhancement counts because the dismissal was taken before the jury heard any evidence at the punishment phase of the trial. *Crist* imposed a double jeopardy bar even though no evidence had been taken at that petitioner's first trial. *See also Downum v. United States*, 372 U.S. 734, 737–38, 83 S.Ct. 1033, 1035–36, 10 L.Ed.2d 100 (1963) ("There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses.") (*quoting Cornero v. United States*, 48 F.2d 69, 71 (9th Cir.1931)).

Nor can the state plausibly argue that Briggs was really subject to two trials, one on guilt and one on punishment, and that jeopardy did not attach at the "punishment trial" before the enhancement counts were dismissed. *Bullard* emphasized the unitary nature of Texas trials involving enhancement allegations. 665 F.2d at 1349 n. 1 (sentencing proceeding "is a part of the trial"); *id.* at 1357 & n. 21 (state must prove prior convictions "*at trial*") (emphasis in original). The same jury sits during both phases. *Crist* afforded Briggs a right to have that jury hear all charges against him.

Finally, as foreshadowed by *French*, 692 F.2d at 1025 n. 7, and as held by *Carter*, 676 S.W.2d at 355, we hold that double jeopardy prevented the retrial of Briggs as a habitual offender even though the state alleged different prior felonies in its second indictment. We emphasize that the Texas Court of Criminal Appeals, in reaching the same result, has viewed jeopardy as attaching to a defendant's "habitual offender status," rather than to each enhancement count individually. *Carter v. State*, 676 S.W.2d 353, 355 (Tex.Crim.App.1984) (Onion, P.J.); *Ex parte Bullard*, 679 S.W.2d

12, 14 (Tex.Crim.App.1984). In other words, once the state has failed to prove that the defendant is a habitual offender with respect to one predicate offense, for example, the burglary here, it may not seek to sentence him as a habitual offender for that underlying crime.[3]

At Briggs's first trial, the state was "given one fair opportunity to offer whatever proof it could assemble" concerning Briggs's status as a habitual offender, and did not prove its case. *Bullard,* 665 F.2d at 1366, *quoting Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). It therefore violated Briggs's right against being placed in jeopardy twice when it retried him as a habitual offender relying upon the same primary offense. Accordingly, we are compelled to reverse the decision of the district court and remand with instructions to grant Briggs's petition unless the state agrees to retry[4] him within 90 days.

REVERSED AND REMANDED.

---

3. This does not, of course, preclude the state from filing a new habitual-offender indictment using a different *predicate* offense. *Carter,* 676 S.W.2d at 354 n. 2.

4. "Texas law does not allow a court to reform the sentence or remand for a new trial solely on punishment where the jury originally assessed the punishment." *French,* 692 F.2d at 1023 n. 2, *citing Hickman v. State,* 548 S.W.2d 736 (Tex. Crim.App.1977).